UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

    -against-

CLYDEDORO GRAHAM,

            Defendant.

No. 14-cr-500 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge

    Defendant Clydedoro Graham is charged in a three-count Superseding Indictment (the "Indictment") with (i) participating in a conspiracy to commit sex trafficking by force, fraud, or coercion, in violation of Section 1594(c) of Title 18 of the United States Code (Count One); (ii) attempted sex trafficking by force, fraud, or coercion, in violation of Section 1594(a) of Title 18 of the United States Code (Count Two); and (iii) kidnapping, in violation of Section 1201(a)(1) of Title 18 of the United States Code (Count Three).  Before this Court are the Government's motions *in limine*, which seek the following:

      (i)      The admission of evidence of Defendant's prior participation in the prostitution business and his control over the prostitution activities of uncharged victims;

      (ii)     the admission of evidence of Defendant's prior possession of a gun;

      (iii)    the admission of evidence of Defendant's use of aliases;

      (iv)    the admission of certain prior statements of the Victim;

      (v)     the preclusion of certain cross-examination of the Victim regarding her prior sexual history; and

      (vi)    the protection of the Victim's identity.

For the reasons set forth below, the Government's motion is GRANTED in part and DENIED in part.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/20/2015

**DISCUSSION**

I.      **Motion *in Limine* Standard**

"A district court's inherent authority to manage the course of its trials encompasses the

right to rule on motions *in limine*." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d

173, 176–77 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n. 4, 105 S. Ct. 460,

83 L. Ed. 2d 443 (1984)).  An *in limine* motion is intended "to aid the trial process by enabling

the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues

that are definitely set for trial, without lengthy argument at, or interruption of, the trial."

*Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996).  "Because a ruling on a motion *in limine* is

'subject to change as the case unfolds,' this ruling constitutes a preliminary determination in

preparation for trial."  *United States v. Perez*, No. 09-cr-1153 (MEA), 2011 WL 1431985, at *1

(S.D.N.Y. Apr. 12, 2011) (quoting *Palmieri*, 88 F.3d at 139 (quoting *Luce*, 469 U.S. at 41, 105 S.

Ct. at 163)).

The Court looks to Rules 401, 402, and 403 of the Federal Rules of Evidence to

determine whether the contested evidence is admissible at trial.  Under Rule 402, only relevant

evidence is admissible.  Fed. R. Evid. 402.  Evidence is relevant if "it has any tendency to make

a fact more or less probable than it would be without the evidence . . . and the fact is of

consequence in determining the action."  Fed. R. Evid. 401.  Relevant evidence may still be

excluded by the Court "if its probative value is substantially outweighed by a danger of one or

more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay,

wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Though the

"standard of relevance established by the Federal Rules of Evidence is not high," *United States v.*

*Southland Corp.*, 760 F.2d 1366, 1375 (2d Cir. 1985), the Court has "broad discretion to balance

2

probative value against possible prejudice" under Rule 403.  *United States v. Bermudez*, 529 F.3d 158, 161 (2d Cir. 2008).

## II.     Defendant's Prior Participation in Prostitution Business

The Government seeks to introduce evidence at trial that the Defendant had, on at least 4 separate occasions, women working for him as prostitutes prior to his association with the Victim.  (The Government's Memorandum of Law in Support of its Motions *In Limine* ("Gov't Mot.") at 4–9.)  The Government contends that such evidence is admissible as direct evidence because it is "inextricably intertwined" with evidence relating to the charged offenses, or, alternatively, is admissible pursuant to Federal Rule of Evidence 404(b) as proof of the Defendant's intent, knowledge, absence of mistake, motive, and *modus operandi* with respect to the charged crimes.  (*Id*. at 4.)  The Defendant argues, on the other hand, that such evidence is inadmissible propensity evidence and that its prejudicial effects greatly outweigh any probative value.  (Graham's Memorandum in Opposition to the Government's Motion *In Limine* to Admit Certain Evidence Against Him ("Def. Opp.") at 5–7.)

### A.  Direct Evidence

The Government cites the Second Circuit's opinion in *United States v. Robinson*, 702 F.3d 22 (2d Cir. 2012) as support for its argument that the Court should admit into evidence testimony regarding the Defendant's prior association with prostitutes.  (Gov't Mot. at 13–14.) In *Robinson*, the defendant—charged with child sex trafficking—sought to argue that the child victim was his girlfriend and that he did not control her prostitution activities.  702 F.3d at 38. Additionally, the child victim maintained that the defendant was her "boyfriend rather than her pimp."  *Id*. at 27.  Citing the "critical factual dispute" as to the nature of the relationship between the defendant and the child victim, the District Court allowed into evidence telephone calls in

which the defendant discussed his involvement in prostitution activities, including the child

victim's prostitution activities.  *Id.*  The Second Circuit held that the District Court did not err in

the admission of such evidence, as "[e]vidence that [the defendant] was in the prostitution

business and controlled prostitutes other than [the child victim] was . . . '*necessary to complete*

*the story of the crime on trial.*'"  *Id.* (quoting *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir.

2000) (emphasis added)).

In the instant case, however, the Cooperating Witness's anticipated testimony regarding

the Defendant's involvement in other prostitution activities is not "necessary to complete the

story" of the crime.   The Government does not assert that, absent the Cooperating Witness's

testimony, it will be unable to establish that the Victim was indeed working as a prostitute for the

Defendant.  Instead, the Government contends, in a conclusory fashion, that "[e]vidence of the

defendant's prior dealings with prostitutes is essential to a jury's understanding of the nature of

the relationship between the Victim and the defendant."  (Gov't Mot. at 13.)  Unsubstantiated

statements do not give rise to the sort of "critical factual dispute" which confronted the court in

*Robinson*.  Consequently, testimony regarding the Defendant's prior dealings with prostitutes is

inadmissible as direct evidence at trial.

### B.  Admission under FRE 404(b)

While inadmissible as direct evidence at trial, testimony regarding the Defendant's prior

dealings with prostitutes is admissible under Rule 404(b)(2) of the Federal Rules of Evidence as

evidence of intent or *modus operandi*.  Courts engage in a three-part test to determine the

admissibility of evidence under Rule 404(b).  *See Huddleston v. United States*, 485 U.S. 681,

688–91, 108 S. Ct. 1496, 1501–02, 99 L. Ed. 2d 771 (1988).  "First, the trial court must

determine whether the evidence is offered for a proper purpose, namely, a purpose other than to

4

prove the defendant's bad character or criminal propensity." *United States v. Colon*, 880 F.2d 650, 656 (2d Cir. 1989). Next, the court must determine whether the proffered evidence is relevant under Rules 401 and 402. *Id.* Finally, "the government may introduce evidence of a defendant's prior crime . . . if the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice." *United States v. Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993) (citing *United States v. Gordon*, 987 F.2d 902, 908 (2d Cir. 1993)). Notably, the Second Circuit has adopted an "inclusionary approach to evaluating Rule 404(b) evidence." *United States v. Edwards*, 342 F.3d 168, 176 (2d Cir. 2003).

### i.      Intent

Prior act evidence is admissible to demonstrate intent "[w]here a defendant claims that his conduct has an innocent explanation . . . ." *Zackson*, 12 F.3d at 1182. While "[e]vidence of other acts need not be identical to the charged conduct to show knowledge or intent pursuant to Rule 404(b)," *United States v. Cadet*, 664 F.3d 27, 32 (2d Cir. 2011), "[t]he government must identify a similarity or connection between the two acts that makes the prior act relevant to establishing knowledge of the current act." *United States v. Garcia*, 291 F.3d 127, 137 (2d Cir. 2002). "Where intent to commit the crime charged is clearly at issue"—i.e., where it is an element of the crime—"evidence of prior similar acts may be introduced to prove that intent." *United States v. Caputo*, 808 F.2d 963, 968 (2d Cir. 1987).

As an initial matter, each of the charged crimes requires the Government to establish intent, knowledge, or willfulness. *See* 18 U.S.C. §§ 2422, 1591, 1201. Furthermore, the Government forecasts that Defendant will assert that he was a paying prostitution customer and that he had no intent to kidnap the Victim and force her to engage in prostitution. (Gov't Mot. at 17.) Evidence concerning the Defendant's prior participation in kidnapping women and forcing

5

them to partake in prostitution activities calls into question the Defendant's "innocent

explanation" for the Victim's presence in his apartment.

The Court agrees with the Government that the proffered testimony is relevant.  In

particular, testimony regarding the Defendant's involvement in prior prostitution activities

squarely concerns the *mens rea* elements of each of the charged offenses.  Further, introduction

of this testimony tends to make "more probable" the existence of the requisite *mens rea*

elements.

Finally, the Court finds that the probative value of this testimony is not substantially

outweighed by the risk of unfair prejudice because the evidence of Defendant's participation in

other prostitution activities is not "any more sensational or disturbing than the crimes" with

which he is charged in the Indictment.  *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d

Cir. 1990).

Consequently, evidence regarding the Defendant's prior dealings with prostitutes is

admissible for the limited purpose of demonstrating the Defendant's intent with respect to the

Victim.  *See, e.g., United States v. Campbell*, 764 F.3d 880, 889 (8th Cir. 2014), *cert. denied*,

135 S. Ct. 1514, 191 L. Ed. 2d 448 (2015) (affirming district court's admission of testimony of

witness regarding uncharged prostitution to demonstrate the defendant's intent, plan, and

preparation in sex trafficking); *United States v. Jennings*, No. 07-14177, 2008 WL 2247142, at

*4 (11th Cir. June 3, 2008) (testimony regarding the defendant's attempts to recruit another

woman into prostitution admissible as evidence of intent in sex-trafficking case).

### ii.    *Modus Operandi*

The Government contends that evidence concerning the Defendant's prior dealings with

prostitutes is also admissible under Rule 404(b)(2) as evidence of *modus operandi*.  "To merit

admission [of prior acts evidence] under [the *modus operandi*] theory, the extrinsic acts must share 'unusual characteristics' with the act charged or represent a 'unique scheme.'" *Berkovich v. Hicks*, 922 F.2d 1018, 1022 (2d Cir. 1991) (quoting *United States v. Benedetto*, 571 F.2d 1246, 1249 (2d Cir. 1978)).  "The similarity sufficient to admit evidence of past acts to establish a recurring *modus operandi* need not be complete; it is enough that the characteristics relied upon are sufficiently idiosyncratic to permit a fair inference of a pattern's existence." *United States v. Sliker*, 751 F.2d 477, 487 (2d Cir. 1984).

Here, the similarities between the charged offenses in the Indictment and prior acts evidence is "sufficiently idiosyncratic" to warrant admission of the evidence.  The Government points to substantial similarities between the charged crime and the Defendant's prior activities with prostitutes: (1) luring the victim to the Defendant's apartment, (2) restricting the victim's movements, (3) threatening the victim, (4) having sex with the victim against her will, and (5) providing the victim as a sexual partner to the Defendant's friends.  (Gov't Mot. at 19.)  Taken together, these repeated acts establish a definitive pattern in the Defendant's conduct—in other words, a *modus operandi*.

Evidence of the Defendant's prior participation in the prostitution business is relevant to demonstrate the development of a conspiracy between the Defendant and his co-conspirators to kidnap women and force them to engage in prostitution activity.  Moreover, the Government contends, and the Court agrees, that the probative value of the evidence is not substantially outweighed by any prejudice because testimony concerning the Defendant's prior dealings with prostitutes is no more "sensational or disturbing" than the charged crimes.  *Roldan-Zapata*, 916 F.2d at 804.

The Court will admit into evidence testimony regarding the Defendant's prior dealings with prostitutes for the additional limited purpose of establishing the Defendant's *modus operandi*. *See, e.g.*, *United States v. Kieffer*, 68 F. App'x 726, 729 (7th Cir. 2003) (upholding admission of prior victim's testimony in case involving defendant's interstate transport of child victims to engage in sexual conduct where prior experiences were "probative evidence of a pattern of operation"); *United States v. Winters*, 729 F.2d 602, 604 (9th Cir. 1984) (holding the trial court did not abuse its discretion in admitting evidence that defendant kidnapped and forced other victims to engage in prostitution for the purpose of proving *modus operandi*).

## III.   Defendant's Prior Gun Possession

The Government seeks to introduce evidence at trial that the Defendant possessed a gun in 2014 to corroborate the Victim's testimony that the Defendant told her that he had a gun. (Gov't Mot. at 21.)  While the Second Circuit has "'consistently held [other act evidence] admissible to corroborate crucial prosecution testimony,'" that "allowance for corroboration is not unlimited." *United States v. Scott*, 677 F.3d 72, 81 (2d Cir. 2012) (quoting *United States v. Everett*, 825 F.2d 658, 660 (2d Cir. 1987)).  There must be a "'close relationship between the proffered evidence and the evidence to be corroborated,'" and the corroboration must be "'direct and the matter corroborated . . . significant.'" *Scott*, 667 F.3d at 81 (quoting *Everett*, 825 F.2d at 660).  Significant evidence is that evidence which is "important—as distinct from trivial— evidence in a trial." *Everett*, 825 F.2d at 660 (holding other crimes evidence admissible as corroboration because it "provided 'important' details describing the formation and implementation" of the charged crime).

Here, testimony reflecting that the Defendant told the Victim he had a gun is not "significant" enough to warrant corroboration.  As the Defendant points out, none of the charged

crimes involve the possession of a weapon.  (Def. Opp. at 7.)  Further, the Victim's anticipated

testimony does not involve any threats by the Defendant to use the weapon against her.  (Gov't

Mot. at 10.)  Instead, the Government states that it anticipates the Victim will testify that the

Defendant told her he was going to confront the Victim's boyfriend and various other individuals

outside the apartment with his gun.  (*Id*.)  The Government's papers make no mention of

forecasted testimony to the effect of the Defendant threatening to use the weapon against the

Victim.  Therefore, the testimony the Government seeks to corroborate is not "crucial

prosecution testimony," and testimony concerning the Defendant's prior possession of a weapon

is inadmissible.[1]

## IV.    Defendant's Use of Aliases

The Government next asserts that the Court should admit evidence of the Defendant's use

of aliases on the night of his arrest to show consciousness of guilt.  (Gov't Mot. at 22.)

"Evidence of a party's consciousness of guilt may be relevant if reasonable inferences can be

drawn from it and if the evidence is probative of guilt."  *United States v. Perez*, 387 F.3d 201,

209 (2d Cir. 2004) (citing 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal

Evidence*, § 401.08 (2d ed. 1997)).  Consciousness of guilt evidence is admissible if it is relevant;

offered for a purpose other than to prove propensity; more probative than prejudicial; and

accompanied by an appropriate limiting instruction.  *Perez*, 387 F.3d at 209 (citing *United States

v. Mickens*, 926 F.2d 1323, 1328–29 (2d Cir. 1991)).  The Second Circuit has permitted the

---

[1] The Government cites *United States v. Zappola*, 677 F.2d 264 (2d Cir. 1982) for the proposition that evidence of the Defendant's prior possession of a gun is admissible because it tends to make it more likely that (i) the Defendant told the Victim that he possessed a gun and (ii) that he in fact had access to a weapon.  (Gov't Mot. at 21.)  In *Zappola*, the Second Circuit held that it was not error to admit an individual's testimony that he had seen a handgun at the defendant's house prior to the defendant firing a handgun in the presence of that individual.  677 F.2d at 270.  Unlike in *Zappola*, where the individual was personally threatened with a weapon, here the Government does not contend that the Victim intends to testify the Defendant threatened her with a gun.  Consequently, in *Zappola*, crucial prosecution testimony existed—that the defendant threatened the individual with a gun and fired it in his presence—warranting corroboration.  The same cannot be said for the instant action.

admission of evidence concerning the use of aliases or false names to demonstrate consciousness of guilt. *See United States v. Stevens*, 83 F.3d 60, 67 (2d Cir. 1996); *United States v. Morales*, 577 F.2d 769, 772 (2d Cir. 1978).

Here, the Government seeks to introduce evidence that the Defendant used the following aliases: (1) the Defendant told police officers on June 18, 2014 that his name was Elton Grant; (2) the Defendant signed his Miranda waiver card with the first name "Clydeb"; and (3) the Defendant told the Victim his name was "L.T."  (Gov't Mot. at 10–11.)  The Court will admit into evidence testimony regarding the Defendant's use of aliases for the limited purpose of demonstrating the Defendant's consciousness of guilt because such evidence is relevant and more probative than prejudicial.  Additionally, though the Government contends that the Victim's testimony that the Defendant told her his name was "L.T." is admissible as direct evidence, it provides no justification for that position.  In anticipation of further explanation from the Government at trial, the Court reserves its ruling with respect to whether this testimony should be admitted as direct evidence.

## V.  Victim's Prior Statements

The Government seeks to admit into evidence a series of statements made by the Victim to law enforcement, as well as a subsequent series of statements made by the Victim to medical personnel.  (Gov't Mot. at 23.)  To the extent the Government intends to elicit testimony regarding those statements from someone other than the Victim, those statements would constitute hearsay.  Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c).  While hearsay is generally inadmissible (Fed R. Evid. 802), the Federal

Rules of Evidence proscribe certain exceptions in which it may be admissible.  *See* Fed. R. Evid.

803.

### A.    Victim's Statements to Law Enforcement

At trial, the Government intends to call at least one of the police officers present at the

Defendant's apartment the night of June 18, 2014.  (Gov't Mot. at 23.)  The Government

forecasts that the police officer will testify the Victim made the following statements to him at

the threshold of the apartment:

- When the police officer asked if the Victim was at the apartment of her own accord; the Victim verbally said "Yes" (Statement # 1), but simultaneously shook her head no (Statement # 2);

- In response to the police officer's written question to the Victim as to whether she wanted to be at the apartment; the Victim shook her head no (Statement # 3);

- In response to the police officer's written question as to whether she was being forced to stay, the Victim nodded her head yes (Statement # 4); and

- The Victim said to the police officer—"Get me the fuck out of here, he's crazy" (Statement # 5).

Subsequently, the police officer brought the Victim further down the hall, where she told him

that the Defendant and a female had held her against her will since Monday, June 16 and had

forced her to have sexual intercourse (Statement # 6).  (Gov't Mot. at 23–24.)  The Defendant

does not object to the admission of Statement #'s 1–5.  (Def. Opp. at 2–3.)[2]

With the exception of Statement # 1, which is not being offered for the truth of the matter

asserted (precisely the opposite) and is admissible, each of the Victim's statements constitutes

---

[2] The Defendant contends that Statement #6 is inadmissible as a prior consistent statement pursuant to Rule 801(d)(1) of the Federal Rules of Evidence.  (Def. Opp. at 3.)  However, as the Government points out, Rule 801(d)(1) concerns the admission of evidence following the cross-examination of a witness.  (Reply Memorandum of Law of the United States of America in Further Support of its Motions *In Limine* ("Reply") at 10.)  Consequently, the Court cannot determine the applicability of Rule 801(d)(1) at this time.

inadmissible hearsay on its face.  Nevertheless, the Government contends that each of the statements is admissible pursuant to one or more of the hearsay exceptions delineated in Rule 803 of the Federal Rules of Evidence.  Rule 803(1) provides that "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it," is admissible as an exception to hearsay.  Additionally, "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused" may be admissible for the truth of the matter asserted.  Fed. R. Evid. 803(2).  Pursuant to Rule 803(3), "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed" is admissible for the truth of the matter asserted.  Fed. R. Evid. 803(3).

The Government argues, and the Court agrees, that Statement #'s 2 and 3 are admissible as hearsay exceptions under Rule 803(3) (then-existing state of mind exception).  "[T]he reasons for the state of mind exception focus on the contemporaneity of the statement and the unlikelihood of deliberate or conscious misrepresentation."  *United States v. Cardascia*, 951 F.2d 474, 487 (2d Cir. 1991) (citing *United States v. Harris*, 733 F.2d 994, 1004 (2d Cir. 1984)).  By shaking her head "no" in response to the police officer's questions, the Victim was conveying her *current* feelings regarding whether she wanted to be at the Defendant's apartment.

The Court further finds that Statement #'s 2–5 are admissible under Rule 803(2) (excited utterances exception) and Rule 803(1) (present sense impression exception).  The reliability of excited utterances, and therefore the reason for their admissibility, is premised upon the notion that "the declarant, in a state of excitement, is unlikely to muster the reflection necessary for fabrication."  *Brown v. Keane*, 355 F.3d 82, 90 (2d Cir. 2004).  Excited utterances "must rest on

personal knowledge" to be admissible (*id*.); however, they "need not be contemporaneous with the startling event. . . ." *United States v. Tocco*, 135 F.3d 116, 127 (2d Cir. 1998).  Present sense impressions, on the other hand, have a contemporaneity requirement.  *United States v. Jones*, 299 F.3d 103, 112 (2d Cir. 2002).  Statements that qualify as present sense impressions under Rule 803(1) "are considered to be trustworthy because the contemporaneity of the event and its description limits the possibility for intentional deception or failure of memory."  *Id*. (citing *United States v. Brewer*, 36 F.3d 266, 272 (2d Cir. 1994)).  The Government predicts that testimony at trial will demonstrate that the Victim was "extremely distressed, nervous, and agitated when she came out of the Apartment to speak with the officers," which lends itself to admissibility under the excited utterances exception.  (Gov't Mot. at 29.)  Furthermore, Statement #'s 2–5 were all made shortly after the police officers discovered the Victim at the Defendant's residence, which supports their admission under the present sense impression exception.  In sum, the statements carry an indicia of reliability warranting their admission as hearsay exceptions under both the excited utterance and present sense impression exceptions.

In its reply brief, the Government asserts that Statement #6 qualifies as an excited utterance.  (Reply at 9.)  Unlike Statement #'s 2–5, which were made at the threshold of the Defendant's apartment moments after the police officers discovered the Victim, Statement #6 was made after the Victim stepped out of the apartment and walked down the hall to speak with one of the police officers.  (*Id*.)  The Court reserves judgment on the admissibility of Statement #6 subject to the Government laying the proper foundation for the statement's introduction.

### B.    Victim's Statements to Medical Personnel

The Government also seeks to introduce a series of statements the Victim made to medical personnel.  (Gov't Mot. at 32–35.)  The Government asserts that the Victim made the

following statements after she was brought to Saint Joseph's Medical Center for evaluation and treatment:

- She was raped by three men. (Statement A)

- The men used condoms. (Statement B)

- She was told to consent to whatever the men did, and the Victim did so because she felt threatened that something might happen if she said no. (Statement C)

- The sex was non-consensual but no force was used.  But the men were rough with her. (Statement D)

- She had oral sex with one of the men.  (Statement E)

- One of the men put the tip of his finger in her anus.  (Statement F)

- She wanted to come to the hospital to make sure she does not get sick.  (Statement G)

(*Id*. at 33.)  The Defendant agrees that Statements B, E, and F are admissible under Rule 803(4) of the Federal Rules of Evidence.  (Def. Opp. at 3.)  In its reply papers, the Government indicates it would forego the admission of Statements C and G.  (Reply at 12.)

Rule 803(4) of the Federal Rules of Evidence provides that "[a] statement that: (A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history, past or present symptoms or sensations; their inception; or their general cause" is admissible when offered for the truth of the matter asserted.  Fed. R. Evid. 803(4).  The Advisory Committee Notes differentiate between statements made for the purpose of medical diagnosis (admissible) and statements assigning fault (inadmissible).  Advisory Comm. Notes, 1972 Proposed Rules.  Therefore, "[s]o long as the identity of the perpetrator is not disclosed, 'a patient's statement describing how an injury occurred is pertinent to a physician's diagnosis and treatment.'"  *Kokoska v. City of Hartford*, No. 3:12-cv-01111 (WIG), 2014 WL 4724879, at *2

(D. Conn. Sept. 23, 2014) (quoting *United States v. Gabe*, 237 F.3d 954, 957–58 (8th Cir. 2001)).

Statements B, E, and F all clearly concern the cause of the Victim's injuries/symptoms and were made for the purpose of medical diagnosis and treatment.  With respect to Statement A, the Defendant's argument that the Victim's description the she "was raped" transforms the statement into an impermissible legal conclusion and should be replaced with the phrase "had sex with" is unavailing.  (Def. Opp. at 3.)  The Court agrees with the Government that there is a "critical distinction between a patient telling a physician that she 'had intercourse with three men' and a patient telling the physician that she was 'raped' by three men."  (Reply at 11.) Substituting the term "rape" may leave jurors with the misimpression that the sex was consensual and would cause confusion as to why a rape kit was performed.  Since Statement A was made for the purpose of medical treatment and described the inception of the Victim's injuries, it is admissible under Rule 803(4).

In his opposition, the Defendant contends that Statement D is only admissible to the extent lack of force was relevant to the medical examination for injuries.  (Def. Opp. at 3.)  The Government concedes this point in its reply papers and states that it would lay the proper foundation before seeking to admit Statement D.  (Reply at 12.)  Therefore, the Court reserves its ruling with respect to the admissibility of Statement D pending the Government's ability to lay the proper foundation for its introduction.

In addition to the Victim's statements to medical personnel, the Government seeks to introduce the medical record of the medical professional who performed the Victim's examination pursuant to Rule 803(6) of the Federal Rules of Evidence.  (Gov't Mot. at 34–35.)

Rule 803(6) provides that "a record of an act, event, condition, opinion, or diagnosis" is an admissible hearsay exception if the following conditions are met:

> "(A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness."

Fed. R. Evid. 803(6).  "'Medical records . . . can be admissible under Federal Rule of Evidence 803(6), provided they are prepared in the regular course of business, near the time of occurrence, by a person with knowledge and are properly authenticated.'"  *Shea v. Royal Enters., Inc.*, No. 09-cv-8709 (THK), 2011 WL 2436709, at *11 (S.D.N.Y. June 16, 2011) (quoting *Hodges v. Keane*, 886 F. Supp. 352, 356 (S.D.N.Y. 1995) (citing *Romano v. Howarth*, 998 F.2d 101, 108 (2d Cir. 1993))).

To the extent the Government lays the proper foundation and authenticates the Victim's medical record, the Court will admit it into evidence.

## VI.    Victim's Sexual History

The Government's motion *in limine* seeks to preclude the admission of evidence of the Victim's other sexual behavior pursuant to Rule 412 of the Federal Rules of Evidence.  (Gov't Mot. at 36–39.)[3]  Rule 412 provides that "evidence offered to prove that a victim engaged in

---

[3] The Government also asserts that evidence regarding the other sexual behavior of the uncharged victims should be precluded.  (Gov't Mot. at 36, n. 13.)

other sexual behavior" or "a victim's sexual predisposition" is not admissible in a criminal

proceeding.  Fed. R. Evid. 412(a).  At the same time, Rule 412 does not block the admission of

"evidence whose exclusion would violate the defendant's constitutional rights."  *Id*. at (b)(1)(C).

Courts in this circuit have applied Rule 412 to exclude evidence relating to a victim's prior

sexual history specifically within the context of sex trafficking cases.  *See, e.g., United States v.

Alvarez*, 601 Fed. App'x 16, 18 (2d Cir. 2015) *cert. denied*, 135 S. Ct. 2337, 191 L. Ed. 2d 997

(2015) (affirming the district court's exclusion of evidence concerning the victim's prostitution

activities subsequent to her involvement with the defendant since such evidence "was not critical

to protect [the defendant's] constitutional rights"); *United States v. Rivera*, No. 13-cv-149

(KAM), 2015 WL 1886967, at *5 (E.D.N.Y. Apr. 24, 2015) (excluding any evidence of the

victim's prior sexual conduct pursuant to Rules 412 and 403 of the Federal Rules of Evidence).

In *Rivera*, the court precluded the introduction of evidence concerning the victims' other sexual

behavior because it was "not relevant to the jury's determination of whether the defendants

committed the charged sexual misconduct."  2015 WL 1886967, at *5.

      The Government requests that it be permitted to offer very limited testimony regarding

the Victim's prior sexual conduct.  In particular, the Government expects that the Victim will

testify that she posted a prostitution advertisement on Backpage.com; received a response to that

posting from the Defendant and his co-conspirators; and went to the Defendant's apartment on

the night of June 16, 2014 for a prostitution date.  (Gov't Mot. at 38.)  The Government contends

that any testimony beyond that related to the Victim's other sexual conduct is inadmissible under

Rule 412.  (*Id*.)  The Defendant does not object to the Government's proposal, provided that the

Government neither claims that the Victim was not a prostitute nor asserts that the Victim did not

come to the Defendant's apartment of her own free will.  (Def. Opp. at 3–4.)  Pursuant to the

17

parties' agreement, the Government may introduce limited evidence regarding the Victim's other sexual behavior.  To the extent the admission of this evidence runs afoul of defense counsel's caveats, the Court will reevaluate this ruling.

**VII.    Victim's Identity**

  The Government requests that the Court protect the identities of the Victim and the uncharged victims by limiting the disclosure of their personal identifying information— specifically, their last names, current addresses, and places of employment.  (Gov't Mot. at 40– 42.)  The parties jointly propose that, at trial, the Victim and the uncharged victims be referred to by their first names only.  (Reply at 12.)  The Court agrees a "legitimate and substantial" interest in protecting the Victim and the uncharged victims from "likely adverse personal, professional and psychological consequences of publicly linking their identities" to their prior prostitution activity warrants protection of their personal identifying information.  *United States v. Paris*, No. 3:06-cr-64 (CFD), 2007 WL 1484974, at *2 (D. Conn. May 18, 2007) (citing *Globe Newspaper Co. v. Superior Court for Norfolk County*, 457 U.S. 596, 607, 102 S. Ct. 2613, 73 L. Ed. 2d 2488 (1982)).  The Court similarly agrees that withholding this type of information will not impair the Defendant's ability to cross-examine the Victim or the uncharged victims.  As such, the Court orders that, at trial, any references to the Victim or uncharged victims shall be by their first names only, and, to the extent they testify, they shall be permitted to do so using their first names only.

**CONCLUSION**

  For the foregoing reasons, the Government's motion *in limine* is GRANTED in part and DENIED in part.  In particular, evidence concerning the Defendant's prior participation in the prostitution business and his control over the prostitution activities of uncharged victims is

admissible for the limited purpose of proving intent or *modus operandi*, but not as direct evidence; evidence concerning the Defendant's prior gun possession is inadmissible; evidence concerning the Defendant's use of aliases is admissible as proof of consciousness of guilt, but not as direct evidence; Statement #'s 1–5 of the Victim's statements to police officers are admissible; the Court reserves judgment with respect to the admissibility of Statement #6 of the Victim's statements to police officers; Statements A, B, E, and F of the Victim's statements to medical personnel are admissible; Statement D of the Victim's statements to medical personnel is admissible to the extent lack of force was relevant to the medical examination for injuries; the medical record is admissible to the extent the Government lays the proper foundation; and evidence concerning the other sexual behavior of the victims is inadmissible except to the extent agreed upon by the parties. Additionally, the Court orders that any references to the victims during trial shall be by their first names only, and the victims may testify using their first names only. The Court respectfully directs the Clerk to terminate the motion at ECF No. 43.

Dated:   October 20, 2015
         White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge

19