UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    -against-

CLYDEDORO GRAHAM,

                           Petitioner.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __2/8/2022__

No. 14-CR-500-1 (NSR)
No. 19-CV-9629 (NSR)

ORDER AND OPINION

NELSON S. ROMÁN, United States District Judge

    Petitioner, Clydedoro Graham ("Petitioner" or "Graham"), was charged in a three-count indictment with conspiracy to commit sex trafficking, attempted sex trafficking, and kidnapping. (ECF No. 15.) On November 5, 2015 a jury found Petitioner guilty on all three counts. On October 27, 2016, this Court sentenced the Petitioner to a term of two hundred and seventy (270) months imprisonment to be followed by a term of supervised release. (ECF No. 120.) Before the Court is Petitioner's motion pursuant to 28 U.S.C. § 2255 to vacate his conviction on the basis of ineffective assistance of counsel. (ECF No. 168.) For the following reasons, Petitioner's motion is DENIED.

## **LEGAL STANDARD**

    A motion under 28 U.S.C. § 2255 is "an extraordinary remedy." *Moyhernandez v. United States*, No. 02 Civ. 8062 MBM, 2004 WL 3035479, at *1 (S.D.N.Y. Dec. 29, 2004). 28 U.S.C. § 2255(a) provides that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

§ 2255(b) provides, in relevant part:

> If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

"A plain reading of the statute contemplates providing a mechanism to detained individuals who seek judicial relief from a wrongfully imposed sentence. It is well settled that § 2255 provides a collateral remedy and not a remedy for an appeal such that it can used to challenge the sufficiency of the evidence." *United States v. Graham*, No. 14-CR-500 (NSR), 2018 WL 798742, at *1 (S.D.N.Y. Feb. 7, 2018) (citing *Dansby v. United States*, 291 F. Supp. 790 (S.D.N.Y. 1968); *Bousley v. United States*, 523 U.S. 614, 621 (1998)).

## DISCUSSION

Petitioner asserts that counsel was ineffective because he (i) "[f]ailed to explain the weight and extent of the government's evidence against him;" (ii) "[f]ailed to advise him about the applications of the sentencing guidelines, including the manner in which Graham's role in the offense;" and (iii) [f]ailed to discuss nor plan a trial strategy." (Memorandum of Law in Support of Petitioner's Motion to Vacate, Set Aside, or Correct the Sentence Under 28 U.S.C. § 2255 ("Mem.") ECF No. 212 at 4.) He alleges that if he had been advised properly, "he would have insisted on seeking a plea deal and possibly pled guilty." (*Id.*)

It is well settled, that counsel owes his client a duty of loyalty, a duty to avoid conflicts of interest, and when representing a criminal defendant, counsel's role is to assist defendant in his defense within the permissible rules of law. *See generally Strickland v. Washington*, 466 U.S. 668 (1984). Such assistance includes the duty to advocate the defendant's cause, to consult with the accused on all matters of importance and to appraise the defendant of important developments in the course of the prosecution. *Id*. at 688. When evaluating counsel's performance, judicial scrutiny must be "highly deferential." *Id*. at 689. In order to reverse a conviction based on ineffective assistance of counsel, the Petitioner must make two showings:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

"[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound [] strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). A defendant claiming ineffective assistance "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id*. at 690.

Here, Petitioner has failed to show his counsel's conduct was deficient, or that it caused him prejudice. First, Petitioner has not shown that his counsel failed to explain the government's evidence against him, failed to advise him about the sentencing guidelines, or failed develop a trial strategy. According to Mr. Braverman's affirmation, he began speaking to Petitioner about his case the day he was appointed, May 13, 2015. (Memorandum of Law of the United States of America in Opposition to Petitioner Clydedoro Graham's Motion to Vacate, Alter or Amend Judgment ("Opp.") ECF No. 182, Ex. B at 6.) A review of Mr. Braverman's billing records shows that he first discussed the case and possible plea discussions with Petitioner, and then turned his focus to trial preparation. (*Id*.) For instance, in May and June of 2015, Mr. Braverman and Petitioner discussed at least two potential plea offers and two sentencing guideline ranges, both of which Petitioner denied. (*Id*.) On

June 29, 2015, Mr. Braverman and Petitioner met in person and discussed the rules of evidence, evidence in the case, trial strategy, and discovery. (*Id.*) Similarly, on August 25, 2015, Mr. Braverman met Petitioner in person and discussed motion practice, trial strategy, and trial submissions. (*Id.*) In October the parties discussed a final, written plea offer, which was again denied by Petitioner. (*Id.*) Mr. Braverman and his employees had at least six additional in person meetings with Petitioner where they discussed his impending trial, and reviewed trial materials. (*Id.*) As Mr. Braverman's sworn affirmation clearly contradicts Petitioner's claims, Petitioner's allegations are insufficient. *See Berrios v. United States*, No. 07-CV-4441 (JS), 2009 WL 2226757, at *3 (E.D.N.Y. July 23, 2009) ("When an attorney's affidavit credibly contradicts a habeas petitioner's ineffective assistance of counsel claim, the Court is entitled to deny the petition without holding an evidentiary hearing.").

Further, Petitioner's claims that Mr. Braverman lacked preparation are conclusory and therefore do not demonstrate a deficient performance or prejudice. *See, e.g., Vasquez v. United States*, Nos. 96 CIV. 2104(PKL), 91 CR. 153(PKL), 1997 WL 148812, at *2 (S.D.N.Y. Mar. 28, 1997) ("[P]etitioner's allegations with regard to alleged counsel errors in pre-trial preparation and investigation and trial advocacy are 'vague, conclusory, and unsupported by citation to the record, any affidavit, or any other source,' and, accordingly, . . . the vague and unsubstantiated nature of the claims' defeated petitioner's claim of ineffective assistance of counsel. . . ."); *Hartley v. Senkowski*, No. CV–90–0395, 1992 WL 58766, at *2 (E.D.N.Y. Mar. 18, 1992)("petitioner's vague and conclusory allegations that counsel did not prepare for trial or object to errors carry very little weight").

4

Second, Petitioner alleges that if he was advised properly by his counsel, he would have insisted on seeking a plea agreement and possibly pleading guilty. However, the record reflects that Petitioner's counsel did seek a plea agreement, and after being fully informed of the agreement, Petitioner decided instead to move forward with trial.

On October 20, 2015, the Court held a final pretrial conference ("PTC"). (Opp. Ex. A.) At the beginning of the conference, the Court noted that it had received a letter from Petitioner that discussed a potential plea offer and alleged issues concerning his counsel, Samuel Braverman. (*Id*. at 3:2-14.) The Government informed the Court that it had engaged in "preliminary informal discussions with Mr. Braverman where [they] discussed a potential plea . . . but there was no formal written plea offer" at that time. (*Id*. at 5:12-19.) On October 16, 2015, the Government "made a formal offer that was to expire" on the morning of the PTC. (*Id*. at 5:20–6:1.) The Government stated that Petitioner had rejected the offer and requested Petitioner allocute that he discussed the offer with his counsel and that he rejected it. (*Id*. at 6:2-8.)

Petitioner's counsel agreed with the Government's statements, and further stated that during the informal plea discussions earlier in the case, he had "conveyed those conversations to [the Petitioner]" and the Petitioner "indicated that he did not wish to have a plea offer along the terms that [they] were discussing." (*Id*. at 6:15-22.) Mr. Braverman stated that when he received the formal offer on October 16, 2015, he "conveyed [it] immediately to [the Petitioner]," and had an associate "go into the jail and literally read him the offer." (*Id*. at 7:6-10.) He stated that he also emailed the Petitioner "all of the important elements of it; mandatory minimums, maximums, Guidelines, waiver of right to appeal, admission requirements; he will be required to admit registration as a sex offender," and other "important details." (*Id*. at 7:11-16.) He then stated that

5

he had further discussions with the Government, and the Government then sent a second, more favorable offer that he immediately emailed to the Petitioner. (*Id*. at 7:20–8:4.) He then explained that Petitioner told him that morning that he did not want to take the offer, and instead wanted to offer the Government a counteroffer, which counsel conveyed, and the Government rejected. (*Id*. at 8:5-10.)

The Court then provided time for Mr. Braverman to speak to his client. (*Id*. at 14:18-22.) After speaking privately, Mr. Braverman stated to the Court:

> I have given Mr. Graham this copy of the last plea agreement that was conveyed to me by the Government and he has a copy of that in his possession. I'm aware that he is aware of all of the terms of that plea agreement and that he has told me that he does not want that plea agreement that's in front of him, and the agreement that he gave to me to propose to the Government, I have conveyed that to the Government, and the Government has indicated to me that they do not accept that Plea Agreement. . . . Therefore, I'm ready to go forward with trial.

(*Id*. at 15:1-12.) Petitioner then asked his counsel to request the Government extend the plea offer deadline by the end of the day, which the Government agreed to do. (*Id*. at 32:20–33:4.)

After a brief adjournment, Petitioner's counsel stated that "nothing of substance ha[d] changed" regarding a potential resolution. (*Id*. at 36:3-4.) He said that he "read the Plea Agreement to [the Petitioner] verbatim and answered his questions", spoke to two of the Petitioner's family members and provided their thoughts to Petitioner, and that Petitioner "had a chance now to think about it, and . . . reached a decision, and the decision is that he is not going to accept the plea offer. Mr. Graham is going to go forward with the trial." (*Id*. at 36:4-16.)

The Court then allocuted Petitioner on the record:

6

> THE COURT: . . . It's my understanding that your attorney, Mr. Braverman, has conveyed to you the Government's plea offer . . .; is that correct?
> THE DEFENDANT: Yes.
> THE COURT: That was discussed with you today?
> THE DEFENDANT: Yes.
> THE COURT: So, my understanding is that defense counsel has advised you regarding the plea offer and that he explained all the provisions of the plea offer; is that correct?
> THE DEFENDANT: Yes.
> THE COURT: And it's also my understanding that Mr. Braverman explained to you the potential sentencing exposure that you face in the event this matter goes to trial?
> THE DEFENDANT: Yes.
> THE COURT: All right. And do you understand that the sentencing exposure after trial . . . is potentially greater than the exposure that you may face under a plea offer? Do you understand that?
> THE DEFENDANT: Yes.
> . . .
> THE COURT: . . . [I]t's my understanding that, that you wish to reject -- the representation that Mr. Braverman made to the Court is that you wish to reject the plea offer and as a result the case will proceed to trial?
> THE DEFENDANT: Yes, because of reasons.

(*Id*. at 36:17–38:10.)

Both the record and Mr. Braverman's affirmation demonstrate that Mr. Braverman spoke to the Government and conveyed to Petitioner two potential plea offers and one written plea offer. Mr. Braverman also, per Petitioner's instructions, provided two counter offers to the Government, which it ultimately rejected. Petitioner's motion contradicts his sworn statements made during his allocution as well as Mr. Braverman's sworn affirmation. As "[a] court can reject bald accusations of ineffective assistance of counsel that contradict a § 2255 movant's sworn statements at the plea allocution", *Hill v. United States*, Nos. 13 Civ. 1107(LAP), 11 Cr. 145(LAP), 2014 WL 104565, at *8 (S.D.N.Y. Jan. 7, 2014), Petitioner has failed to show his counsel's assistance was deficient, and his claim fails.

**CONCLUSION**

For the foregoing reasons, Petitioner's motion pursuant to 28 U.S.C. § 2255 to vacate his conviction on the basis of ineffective assistance of counsel is DENIED. Petitioner failed to demonstrate entitlement to the relief sought. The Clerk of the Court is directed to terminate the motion at ECF Number 168, mail a copy of this endorsement to pro se Petitioner, and show service on the docket.

Dated: February 8, 2022  
White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge